UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | Chapter 7 |
| | ) | Case No. 10-36548 |
| Theodore S. Wright, Jr., | ) | Hon. A. Benjamin Goldgar |
| | ) | Hearing Date:  March 25, 2015 |
| Debtor(s). | ) | Time:   9:30 a.m. |

**Notice of Trustee's Motion to Sell Real Estate Free and Clear of Liens Pursuant to
Section 363(f) and to Pay Broker's Commission**

To:    *See Attached Service List*

**Notice of Hearing on Motion:**        On Wednesday, March 25, 2015, at 9:30 a.m., or as soon thereafter as counsel may be heard, I shall appear before the Honorable A. Benjamin Goldgar, United States Courthouse, 219 South Dearborn Street, Room 642, Chicago, Illinois, and shall then and there present **Trustee's Motion to Sell Real Estate Free and Clear of Liens Pursuant to Section 363(f) and to Pay Broker's Commission**, a true and correct copy of which is enclosed with this notice and hereby served upon you.

**Property to be Sold:**   The Property to be sold is located at 5 Shore Drive, Ogden Dunes, Indiana.

**Objections to Motion:**        Pursuant to Rule 6004(b) of the Federal Rules of Bankruptcy Procedure, objections, if any, to the proposed Sale of the Property or the payment of the Broker's commission as described in the Motion must be filed on or before **March 18, 2015** with the Clerk of the United States Bankruptcy Court, 219 South Dearborn Street, Chicago, IL 60604, with a copy to be served concurrently on the Trustee's counsel at the address set forth below.

**Procedures for Competitive Bidding:**      In the event that any creditor or other party wishes to submit a bid to purchase the Property, such party must submit their competitive bids to the Trustee at the address set forth below no later than March 20, 2015.  Competitive bids must be accompanied by a cashier's check for $5,000.00 earnest money and the sales price for the Property must be at least $278,000.00.  Additional terms for competitive bidding are set forth at paragraph 8 of the Motion.

/s/ Elizabeth C. Berg, trustee

Elizabeth C. Berg
Joseph A. Baldi
Baldi Berg, Ltd.
20 N Clark Street, Suite 200
Chicago, IL 60602
(312) 726-8150

**Certificate of Service**

I, Joseph A. Baldi, hereby certify that on March 4, 2015, I caused a true and correct copy of the foregoing Notice and the Motion identified therein, including all exhibits and a proposed order, to be served upon the persons identified on the attached service list, either electronically via CM/ECF or by first class mail, postage prepaid, as indicated on the service list.

/s/ Joseph A. Baldi
One of her attorneys

Elizabeth C. Berg
Joseph A. Baldi
Baldi Berg, Ltd.
Suite 200
20 N. Clark Street
Chicago, Illinois   60602
312-726-8150

**Limited Service List**
**Theodore S. Wright, Jr., debtor**
**Case No. 10-36548**

**Via Electronic Notice**

| | |
|---|---|
| Richard M. Bendix: | rebendix@dykema.com  (on behalf of East Dubuque Savings Bank) |
| Jeffrey S. Burns: | jburns@cbklaw.com (on behalf of First American Bank) |
| Scott R. Clar: | sclar@craneheyman.com (on behalf of H. Leifman, accountant) |
| Patience R. Clark: | prc@clarklawchicago.com (on behalf of Frank Phelps) |
| Shelly A. DeRousse: | sderousse@stahlcowen.com (on behalf of First Merit Bank) |
| Maria A. Diakoumakis: | mdiakoumakis@dykema.com (on behalf of East Dubuque Savings Bank) |
| Maria Georgopoulos: | nd-four@il.cslegal.com (on behalf of Statebridge Company LLC; BNY |
| David L. Hazan: | dlhazan@divergrach.com (on behalf of Fifth Third) |
| Gregory J. Jordan: | gjordan@jka-law.com (on behalf of Int'l Phoenix, Pacific Phoenix, Joan DeSouza) |
| Kenneth T. Kubiesa: | kubiesa@kkatty.com  (on behalf of Hinsdale Bank & Trust) |
| Patrick S. Layng: | USTPRegion11.ES.ECF@usdoj.gov |
| Ryan Maney: | maney@ksgalaw.com (on behalf of Hinsdale Bank & Trust) |
| Daniel J. Nickel: | daniel.nickel@gmail.com (on behalf of Reavy Therapy) |
| Michael B. Raines: | mraines@dykema.com (on behalf of East Dubuque Savings Bank) |
| Eric S. Rein: | rrein@hmblaw.com (on behalf of East Dubuque Savings Bank) |
| Nathan J. Reusch: | nreusch@rsmalaw.com (on behalf of Ocwen Loan Servicing) |
| Scott N. Schreiber: | sschreiber@stahlcowen.com (on behalf of First Merit Bank) |
| Arthur J. Simon: | asimon@craneheyman.com (on behalf of Crane Heyman) |
| Jeffrey Snell: | Jeffrey.snell@usdoj.gov (on behalf of UST) |
| James E. Trausch: | atalty@jtolaw.com (on behalf of BNY Mellon) |
| Gloria C. Tsotsos: | nd-three@il.cslegal.com (on behalf of BBT Mellon) |
| Ariel Weissberg: | ariel@weissberglaw.com (on behalf of Debtor) |

**Via First Class U.S. Mail**

Theodore S. Wright, Jr.
4757 West Monroe
Chicago, IL 60641

Andrzej Popek
8292 N. Elmore St.
Niles, IL 60714

Roger Brejcha
512 W. Burlington – Suite 6A
LaGrange, IL 60525

George & Elizabeth Tomaszewicz
10 Lakewood Dr.
Bannockurn, IL 60015

Sandee L. Wright
65 Baybrook Ln.
Oak Brook, IL 60523-1636

Dept. of Treasury-IRS
P.O.Box 21126
Philadelphia, PA  19114

American Express FSB & Centurion
c/o Becket and Lee LLP
P.O. Box  3001
Malvern, PA 19355-0001

Bank of America, Inc.
NC1-001-07-06
Attn: Drew Frost
101 N. Tyron St.
Chicago, IL 28246-0100

Chase Bank UST, NA
P.O. Box 15145
Wilmington, DE  19850-5145

City of Chicago-Dept. of Revenue
Water Mgmt. Billing/Cust. Service
333 S. State St.
Suite LL10
Chicago, IL 60604-3957

Commonwealth Edison Company
3 Lincoln Center
Attn: Bankruptcy Section
Oakbrook Terrace, IL 60181-4204

FIA Card Services, NA
4161 Piedmont Parkway
NC4 105 03 14
Greensboro, NC 27410

Garland County
200 Woodbine
Hot Springs National Park, AR 71901-5121

Health PCP
c/o Al Walker
18440 Thompson Court Suite 105
Tinley Park, IL 60477-5427

Healthcare Data Services
c/o Collection Associates
P.O. Box 465
Brookfield, WI  53008-0465

Illinois Bell Telephone
c/o AT&T Services
James Grudus, Esq.
One AT&T Way, Room 3A218
Bedinster, NJ  07921-2693

International Monetary Systems
16901 W. Glendale Dr.
New Berlin, WI 53151-2723

Karl Kuester
Key Management
551 W. 2nd Street
Elmhurst, IL 60126-2565

LSX Delivery, LLC
P.O. Box 809246
Chicago, IL 60680-9201

Liberty Mutual Group
100 Liberty Way
P.O. Box 1525
Dover, NH 03821-1525

Manning Silverman & Co.
175 Olde Half Day Rd.
Lincolnshire, IL 60069

Medical Electronics
P.O. Box 45030
Kansas City, MO  64171-8030

Ogden Dunes Waterworks
115 Hillcrest Rd.
Ogden Dunes, IN 46368-8502

PNC Bank
P.O. Box 94982
Cleveland, OH 44101-4982

Peoples Gas
130 E. Randolph Dr.
Chicago, IL 60601

David Barrick
Coldwell Banker Real Estate
20 East U.S. Highway 30
Schererville, Indiana 46375

Andrew Lee
ALSJ, Inc.
6603 Beckwith Rd.
Morton Grove, IL 660053

Porter County Treasurer
155 Indiana Ave., Room 209
Valparaiso, IN  46383-5566

Patzik Frank & Samotny
Attn: Susan R. Freese
150 S. Wacker Dr.
Chicago, IL 60606-4201

Wells Fargo Bank, NA
4137 121st Street
Urbandale, IA  50323-2310

Yellow Book Sales & Dist.
c/o RMS Bankruptcy Recovery Services
P.O. Box 5126
Maryla, ND  21094

**UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re | ) | Case No. 10-36548 |
| | ) | Chapter 7 |
| Theodore S. Wright, Jr., | ) | Hon. A. Benjamin Goldgar |
| Debtors. | ) | Hearing Date: March 25, 2015 |
| | ) | Time: 9:30 a.m. |

**Trustee's Motion to Sell Real Property Free and Clear of Liens Pursuant to Section 363(f)
and to Pay Broker's Commission**

Elizabeth C. Berg, not personally but solely as trustee ("Trustee") of the estate ("Estate") of

Theodore S. Wright, Jr., debtor ("Debtor"), pursuant to 11 U.S.C. § 363(b) and (f), respectfully

requests this Court to enter an order i) authorizing her to sell the parcel of real property located at 5

Shore Drive, Ogden Dunes, Indiana ("Property"), ii) authorizing Trustee to sell the Property free

and clear of all  liens, claims and interests, with any such liens, claims or interests to attach to the

proceeds of sale and iii) allowing and authorizing payment of a brokers commission on the sale of

the Property.  In support thereof, Trustee respectfully states as follows:

**Introduction**

1.      Debtor commenced this case by filing his voluntary petition for relief under chapter

11 of the Bankruptcy Code ("Code") on August 16, 2010.  The case was converted to one under

chapter 7 of the Code on June 27, 2012.

2.      Elizabeth C. Berg is the duly appointed, qualified and acting successor chapter 7

trustee in this case.

3.      Among the assets belonging to this Estate is a parcel of real estate improved with a

residence which is located at 5 Shore Drive, Ogden Dunes, Indiana ("Property").   Trustee is

informed and believes that Debtor is the sole owner of the Property.

4.      The Property is encumbered by a mortgage lien in favor of Pacific Phoenix Group,

LLC ("PPG").  PPG has filed a proof of claim in this case asserting a $1.2 million claim secured by

said mortgage (the "PPG Mortgage").  Trustee disputes the PPG claim and believes the grant of the PPG Mortgage is an avoidable transfer, as more fully set forth below.  Trustee is not aware of any other consensual liens or judgment liens against the Property.  The Property is subject to statutory liens for current and delinquent real estate taxes and water charges.

### Offer to Purchase Property

5.     Trustee determined that there may be equity in the Property for the Estate in light of appraisals of the Property and the amount of the liens against the Property.  Trustee inspected the Property and found that the residence on the Property is in need of substantial repairs and may not be habitable.  Nevertheless, due to the location of the Property across the street from beaches on Lake Michigan in a resort community, Trustee believes the Property may have equity for the Estate.  As a result, Trustee retained David Barrick, a real estate broker with Coldwell Banker Real Estate, and listed the Property for sale.  David Barrick has marketed the Property on behalf of the Estate.

6.     Trustee has received an offer to purchase the Property from James Blatsioris and Shehong Z. Blatsioris ("Purchasers") for a purchase price of $273,000.00 ("Purchase Price").  Purchasers and Trustee have entered into a Real Estate Sales Contract ("Sales Contract"), a copy of which is attached hereto as Exhibit A.  The essential terms of the Sales Contract provide as follows:

a)     Purchasers will pay the Purchase Price by the payment of an initial earnest money deposit of $5,000.00 with the balance to be paid in cash at closing.  There are no mortgage contingencies in the Sales Contract;

b)     Purchasers will purchase the Property "as is – where is", with no warranties or representations regarding the condition of the Property;

2

c)      The Property will be transferred to Purchasers free and clear of liens, claims and interests, with all such liens, claims and interest to attach to the proceeds of sale in accordance with §363(f) of the Code;

d)      The Sales Contract is subject to and conditioned on the entry of an order of this Court approving the Sales Contract and authorizing the proposed sale; and

e)       Closing will take place on or before April 28, 2015.

7.      Trustee believes the Purchasers' Sales Contract is fair and reasonable and represents the highest and best price for the Property.    Trustee has reviewed an appraisal for the Property and believes that Purchasers' offer is well within the range of the Property's appraised value.    Purchasers' offer is a cash offer which is not contingent on financing.    If approved, the Estate will realize substantial equity from the proposed sale of the Property after the payment of tax lien claims, the Broker's commission and the customary costs of sale.

## Bidding Procedures for Additional Offers

8.   Trustee is informed and believes that one or more parties, including the Debtor, may submit competitive bids to purchase the Property.    As a result, Trustee has established bidding procedures for the acceptance and consideration of any competing bids for the Property in Paragraph R-3 of the Rider to the Sales Contract.    In order for any competitive bids to be considered by the Trustee or presented to the Court, the following procedures must be followed:

a)      Any competitive bid Sales Price must exceed the Purchase Price by at least $5,000;

b)      Any competitive bid must be accompanied by a cashiers' check in the amount of $5,000.00 as earnest money;

c)      Any competitive bid must be on terms that are the same as the Sales Contract;

d)      To be considered by the Trustee, competitive bids must be submitted in writing to the Trustee at her place of business no later than the close of business on March 20, 2015;

e)       Trustee reserves the right to request additional documentation or verification of the ability of any bidder to close in accordance with the terms of the Sales Contract, including verification of the availability of funds to pay the purchase price;

f)       In the event Trustee receives at least one competitive bid which complies with the above terms, Trustee shall on the date of the Hearing of this Sale Motion, at a time and place which will be announced in open court, conduct an auction sale of the Property. Bidding will proceed in increments of $2,500.00 after the initial bid, which must be at least $278,000.00, and shall continue until Trustee declares one of the bidders to be the bidder offering the highest price for the Property.  Trustee will then present the highest bid to the Court for approval of the sale of the Property.

9.       Trustee has set out the above terms for competitive bidding in the Notice provided of the presentation of this Motion.  Trustee has served this Motion and the Notice accompanying the Motion on all creditors and parties in interest entitled to notice under the Court's Order Limiting Notice entered on November 26, 2014 and on parties who have expressed an interest in purchasing the Property.  In addition, the broker for the Property has a copy of the Motion and the bid procedures and will provide a copy to any party who requests it.

### Sale Free and Clear of Lien Claims

10.       Trustee requests that the order approving the sale of the Property provide that the Property will be sold free and clear of liens, claims and interests, with all liens, claims or interests to attach to the proceeds of sale in accordance with §363(b) and 363 (f) of the Code.  PPG asserts a mortgage lien against the Property to secure a claim of 1,200,000.00 and there are tax liens against the property for delinquent real estate taxes in the amount of $78,283.04.  The Purchase Price greatly exceeds the amount of the delinquent tax liens and trustee intends to pay those liens

4

at closing.  Accordingly, Trustee may sell the Property free and clear of the delinquent tax liens pursuant to the provisions of §363(f)(3).

11.    The PPG claim is subject to a bona fide dispute and the Property may be sold free and clear of the PPG lien pursuant to §363(f)(4).  Trustee believes the PPG claim is not allowable against the Estate and that the lien claim is subject to avoidance.  The disputes with respect to the PPG lien claim include, but are not limited to, the following:

a)    The PPG claim is not allowable against the Estate because there was no consideration for the claim.  Debtor did not enter into a written agreement with PPG and PPG did not advance any funds for or on behalf of Debtor.  The principal of PPG, Joan DeSouza, has testified at 2004 exams that the consideration for the PPG claim was for "services" but again, Debtor had no written agreement with PPG for any services to be provided.  PPG is a loan broker and the only loans procured by PPG, DeSouza or her development company, International Phoenix Group, LLC ("IPG") were for less than $600,000.00, which would certainly not justify loan fees of $1,200,000.00.  Accordingly, there is no basis to assert that PPG provided consideration to Debtor to support a claim of $1,200,000 and Trustee intends to object to the PPG claim on that basis.

b)    Debtor executed the PPG note in December of 2007 but the PPG mortgage was not recorded until April of 2010.  Accordingly, the transfer of the mortgage lien to PPG was on account of an antecedent debt.  PPG, Joan DeSouza and IPG were insiders of Debtor as a result of their position as managing agents or persons in control of Debtor and Debtor's business operations, as that term is defined in section 2(g) of the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/2(g).  DeSouza, and through her, PPG, were insiders of Debtor as a result of their control of his financial affairs.  The initial letter agreement between DeSouza, IPG and Debtor signed on November 18, 2007 provided that DeSouza would

assume responsibility for developing and implementing a plan to consolidate existing debt of Debtor.  Over the years thereafter, DeSouza became the managing member of Orville, LLC, the entity which held title to Debtor's medical office building and adjacent real estate which was to be developed by IPG.  IPG managed the real estate, entered into leases and collected rents from Debtor's business properties.  DeSouza also became the managing member of Debtor's medical practice, which was operated through The Montrose Medical Group, LLC and DeSouza was the sole signatory on bank accounts for Montrose.  In February of 2010, both Debtor and DeSouza sent out letters and emails to creditors indicating that DeSouza was taking over the management of Debtor's financial affairs.  For all of the foregoing reasons, DeSouza and PPG were insiders of Debtor.

Further, both DeSouza and PPG had reasonable cause to believe that Debtor was insolvent at the time the PPG mortgage was recorded.  Trustee can, accordingly, bring an action to avoid the PPG mortgage under the provisions of section 6(b) of the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/6(b) and section 544(b)(1) of the Code.  For purposes of section 544, the Internal Revenue Service was and remains a creditor of Debtor by reason of Debtor's failure to file tax returns for the years 2007, 2008, 2009 and 2010, as evidenced by claim no. 13 filed by the Internal Revenue Service in this case.  The statute of limitations for the IRS to bring such a claim is 10 years from the date of assessment of the taxes due, which is applicable to Trustee in this case.  *See, Ebner v Kaiser*, *2014 Bankr. LEXIS 5202; 2015-1 U.S. Tax Cas. (CCH) P50,173; 115 A.F.T.R.2d (RIA) 416.* (Hon. T. Barnes, December 31, 2014).

c)      Trustee is investigating and intends to seek avoidance of payments made to PPG, DeSouza and IPG during the one year period prior to the petition date under a theory similar to that set forth in subparagraph b above.  To the extent such payments are avoidable

6

transfers to PPG, the PPG claim must be disallowed under section 502(d) of the Code until such avoided transfers are returned to the estate.

d)      The transfer of the PPG mortgage was a fraudulent transfer avoidable by the Trustee.  Debtor was insolvent at the time the PPG Mortgage transfer took effect in April of 2010 and Debtor did not receive any consideration for the transfer or the consideration which was received was less than reasonably equivalent value for the transfer of the mortgage interest in the Property.

12.      As a result of the foregoing, there is an objective basis to find that there are factual and legal grounds to dispute the validity of the PPG Mortgage and, therefore, there is a bona fide dispute permitting the Trustee to sell the Property free and clear of the PPG Mortgage under section 363(f)(4) of the Code.  *See, In re Octagon Roofing*, 123 BR 583 (Bankr. ND Il 1991); *In re Gulf States Steel Inc. of Alabama*, 285 B.R. 497 (Bankr. ND Al, 2002).  Trustee's attorneys are preparing and will file an adversary complaint and objection to claim incorporating the matters set forth in paragraph 11 above prior to the hearing on this Motion.

### Request to Pay Brokers Commission

13.      On January 28, 2015, Trustee obtained an order of this Court authorizing the retention of David Barrick to represent the estate as a real estate broker pursuant to the terms and conditions of an exclusive right to sell agreement and attached rider ("Listing Agreement")  dated January 13, 2015.  Pursuant to the terms of the Listing Agreement David Barrick is entitled to receive a broker's commission in an amount equal to 6 % of the sale price for the Property plus $445, subject to approval by this Court upon the closing of this transaction.  The Listing Agreement also provided that no commission is earned by or payable to David Barrick unless and until both (i) the Property is sold to a purchaser introduced to the Property during the term of the Listing

Agreement, and (ii) the agreed purchase price is paid to the Estate in good funds or otherwise realized by the Estate.

14.     David Barrick has expended time and has incurred costs in connection with his representation of the Estate in this transaction.    David Barrick has personally inspected the Property and prepared a comparative market value analysis for the Property, shown the Property to prospective purchasers, listed the Property in applicable multiple listing services and otherwise acted as the agent of the Estate in connection with the proposed sale.

15.     Trustee requests that this Court approve a real estate broker's commission of $16,825.00 to be paid to David Barrick as final compensation for his services to the Estate, representing 6 % of the Purchase Price for the Property plus $445.  The proposed commission to David Barrick is the amount payable pursuant to the Listing Agreement and is customary in the real estate industry for transactions of this type.  The commission to be paid represents the full and final compensation which will be paid to David Barrick in connection with its services as a real estate broker for the Estate.

**Payment of Closing Costs**

16.     Trustee will incur customary closing costs, including costs for recording fees, title charges, payment of water charges, transfer taxes and title insurance charges in connection with the closing of the sale of the Property for which the Estate is obligated pursuant to the Sales Contract.  In addition, any real estate taxes which remain unpaid and the prorated portion of real estate taxes which have been assessed but are  not yet due and payable must be paid or credited to the Purchasers at the closing of the sale of the Property.   All such charges are either administrative expenses of this estate or are amounts secured by liens against the Property which must be paid at closing in order to deliver good title to Purchasers and comply with the Sales Contract.  Accordingly, Trustee requests that she be authorized to pay or permit a credit against

8

the Purchase Price for all customary closing costs and real estate taxes at the closing of the sale of the Property from the proceeds of sale.

### Notice to Creditors

17.     Trustee has provided more than 21 days notice of this Motion to the Debtor, the United States Trustee and the creditors on the Limited Service List approved by this Court's order of November 26, 2014 by serving a copy of this Motion on such parties, in compliance with Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure.  In addition, PPG is a creditor of the Estate and therefore received a copy of this Motion and parties expressing an interest in submitting competitive bids also have received a copy of this Motion.

WHEREFORE, Elizabeth C. Berg, as trustee of the estate of Theodore S. Wright, Jr., debtor, requests this Court to enter an order:

a)     Authorizing Trustee to sell the Property located at 5 Shore Drive, Ogden Dunes, Indiana to Purchasers for $273,000.00 pursuant to the terms of the Sales Contract or for such higher amount as may be accepted by the Trustee in the event of competitive bidding;

b)     Authorizing Trustee to sell the Property to Purchasers free and clear of all liens, claims and interest, with all liens, claims and interests to attach to the proceeds of sale;

c)     Authorizing Trustee to execute any and all documents necessary or proper to close the sale of the Property and transfer title to Purchasers;

d)     Allowing and Authorizing Trustee to pay a real estate broker's commission of $16,825.00 to David Barrick from the proceeds of sale at closing as final compensation for his services to the Estate as a real estate broker;

e)     Authorizing Trustee to pay from or provide a credit against the proceeds of sale for the amounts due and owing on account of real estate taxes and all other customary costs of sale for which Trustee is responsible under the terms of the Sales Contract;

9

       f)     Authorizing Trustee, after payment of the amounts set forth above for real estate taxes and customary closing costs, to deposit the remaining net proceeds in an Estate bank account to be disbursed on further order of court; and

       h)     For such other and further relief as this Court deems proper.

Dated:  March 4, 2014

Respectfully submitted,

Elizabeth C. Berg, as trustee of the Estate
of Theodore S. Wright, Jr., debtor

By: __Joseph A. Baldi /s/_____
      One of her Attorneys

Joseph A. Baldi
Elizabeth C. Berg
Baldi Berg, Ltd
20 N. Clark Street, Suite 200
Chicago, Illinois  60602
(312) 726-8150

10

Listing Broker (Co.) Coldwell Banker Residential Brokerage —:::—:16:::6–,—) By David W. Barrick    1052
*individual code*
Selling Broker (Co.) Coldwell Banker Residential Brokerage 166 ) By David W. Barrick    1052
*office code*    *individual code*

# PURCHASE AGREEMENT
## {IMPROVED PROPERTY}

1  Date: February 11, 2015
2
3  A. BUYER:    **James Blatsioris, Shehona Z. Blatsioris**    ("Buyer")
4  agrees to buy the following property from the owner ("Seller") for the consideration and subject to the following
5  terms, provisions, and conditions:
6
7  B. PROPERTY: The property ("Property") is known as —=—,,——5 Shore Drive
8  in    **Portage**    Township,    **Porter**    County,    **Portage**
9  Indiana,    **46368**    (zip code) legally described as: Ogden Dunes 4th Sub Lot Blk J and Lot 3 Blk J.
10
11  together with any existing permanent improvements and fixtures attached (unless leased or excluded), including,
12  but not limited to, electrical and/or gas fixtures, home heating fuel, heating and central air-conditioning equipment
13  and all attachments thereto, built-in kitchen equipment, sump pumps, water softener, water purifier, gas grills,
14  fireplace inserts, gas logs and grates, central vacuum equipment, window shades/blinds, curtain rods, drapery poles
15  and fixtures, ceiling fans and light fixtures, towel racks and bars, storm doors, windows, awnings, TV antennas,
16  wall mounts, satellite dishes, storage barns, all landscaping, mailbox, garage door opener with controls AND THE
17  FOLLOWING:
18  any personal property remaining on the premises at closing which has not been removed by Dr. Wright shall be transfered
19  to buyers in "as is – where is" condition with no representations or warranties of any kind
20
21
22  EXCLUDES THE FOLLOWING:
23
24  The terms of this Agreement will determine what items are included/excluded, not the Seller's Disclosure 2/24/15
25  Form, multiple listing service or other promotional materials. All items sold shall be fully paid for by Seller
26  at time of closing the transaction. Buyer should verify total square footage, land, room dimensions or
27  community amenities if material to. 2/24/15    273,000.00    SB
28    Three
29  C. PRICE: Buyer will pay the total purchase price of ($ ~~273,000.00~~ ~~278,000.00~~ ) Two Hundred Seventy-
30  ~~Three Eight~~ Thousand    Dollars for the Property. If
31  Buyer obtains an appraisal of the Property, this Agreement is contingent upon the Property appraising at no less
32  than the agreed upon purchase price.
33
34  D. EARNEST MONEY:
35  1. Submission: Buyer submits $ 5,000.00    as earnest money which shall be applied to the
36  purchase price at closing. Unless indicated otherwise in this Agreement, the listing broker shall act as Escrow
37  Agent and shall deposit Earnest Money received into its escrow account within two (2) banking days of
38  acceptance of this Agreement and hold it until time of closing the transaction or termination of this Agreement.
39  Earnest money shall be returned promptly to Buyer in the event this offer is not accepted. If Buyer fails for any
40  reason to timely submit Earnest Money in the contracted amount, Seller may terminate this Agreement upon
41  notice to Buyer prior to Escrow Agent's receipt of the Earnest Money.
42  2. Disbursement: Upon notification that Buyer or Seller intends not to perform, and if Escrow Agent is the
43  Broker, then Broker holding the Earnest Money may release the Earnest Money as provided in this Agreement. If
44  no provision is made in this Agreement, Broker may send to Buyer and Seller notice of the disbursement by
45  certified mail of the intended payee of the Earnest Money as permitted in 876 IAC 8-2-2. If neither Buyer nor
46  Seller enters into a mutual release or initiates litigation within sixty (60) days of the mailing date of the certified
47  letter, Broker may release the Earnest Money to the party identified in the certified letter. If the Escrow Agent is
48  the Broker, Broker shall be absolved from any responsibility to make payment to Seller or Buyer unless the
49  parties enter into a Mutual Release or a Court issues an Order for payment, except as permitted in 876 IAC 8-2-2
50  (release of earnest money). Buyer and Seller agree to hold the Broker harmless from any liability, including
51  attorney's fees and costs, for good faith disbursement of Earnest Money in accordance with this Agreement and
52  licensing regulations
53  3. Legal Remedies/Default: If this offer is accepted and Buyer fails or refuses to close the transaction, without
54  legal cause, the earnest money shall be retained by Seller for damages Seller has or will incur. Seller retains all
55  rights to seek other legal and equitable remedies, which may include specific performance and additional
56  monetary damages. All parties have the legal duty to use good faith and due diligence in completing the terms
57  and conditions of this Agreement. A material failure to perform any obligation under this Agreement is a default
58  which may subject the defaulting party to liability for damages and/or other legal remedies, which, as stated
59  above, may include specific performance and monetary damages in addition to loss of Earnest Money.

5 Shore Drive, Portage, IN 46368
(Property Address)
Page 1 of 7 (Purchase Agreement)
Copyright IAR 2015

Coldwell Banker Res. Brokerage, 20 E Highwll US 30 Schererville, IN 4657;    Phone: 219.86; 9911    Fax: 219.227.0279
David Barrick    Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.ziplogix.com    James Blatsioris

**Exhibit A**

60 E. METHOD OF PAYMENT:(Check appropriate paragraph number)
61     1. ☒ CASH:The entire purchase price shall be paid in cash and no financing is required.
62     2. ○ NEW MORTGAGE: Completion of this transaction shall be contingent upon the Buyer's ability to obtain a
63
64        ○ Conventional ○ Insured Conventional ○ FHA ○ VA ○ Other:-------------------- first
65        mortgage loan for ------ % of purchase price, payable in not less than -------- years, with an
66        original rate of interest not to exceed ------ % per annum and not to exceed ======points. Buyer
67        shall pay all costs of obtaining financing, except --------------------------------------
68        ---------------------------------------------------------------------------
69        --------------------------------------------------------------------------
70        Any Inspections and charges which are required to be made and charged to Buyer or Seller by the lender,
71        FHA, VA, or mortgage insurer, shall be made and charged in accordance with their prevailing rules or
72        regulations and shall supersede any provisions of this Agreement.
73
74     3. ○ ASSUMPTION:(Attach Financing Addendum)
75     4. ○ CONDITIONAL SALES CONTRACT:(Attach Financing Addendum)
76     5. ○ OTHER METHOD OF PAYMENT:(Attach Financing Addendum)
77
78 F. TIME FOR OBTAINING FINANCING:Buyer agrees to make written application for any financing necessary
79     to complete this transaction or for approval to assume the unpaid balance of the existing mortgage within  N/A
80     days after the acceptance of this Agreement and to make a diligent effort to meet the lender's requirements and to
81     obtain financing in cooperation with the Broker and Seller. No more than   N/A   days after acceptance of the
82     Agreement shall be allowed for obtaining loan approval or mortgage assumption approval. If an approval is not
83     obtained within the time specified above, this Agreement may terminate unless an extension of time for this
84     purpose is mutually agreed to in writing.
85
86 G. CLOSING:The closing of the sale (the "Closing Date") shall be on or before   April 28, 2015   , or
87     within ----- days after ------------------------ , whichever is later or this Agreement
88     shall terminate unless an extension of time is mutually agreed to in writing. Any closing date earlier than the latest
89     date above must be by mutual written agreement of the parties. The settlement or closing fee incurred in
90     conducting the settlement charged by the closing agent or company shall be paid by ○ Buyer (Included in
91     allowance,if provided) ○ Seller ☒ Shared equally.
92
93     This Agreement is ☒ not contingent upon the closing of another transaction;  ○ is contingent upon the closing of
94     the pending transaction on the property located at -----------------------------------
95     ----------------------- scheduled to close by — — — — — — — — — — —
96
97     Notwithstanding terms to the contrary, the Parties agree that as a condition to closing, all funds delivered to the
98     closing agent's escrow account be in such form that the closing agent be able to disburse in compliance with
99     I.C. 27-07-3.7 et. seq.. Therefore, all funds from a single source of $10,000 or more shall be wired unconditionally
100     to the closing agent's escrow account and all funds under $10,000 from a single source shall be good funds as
101
102     so defined by statute.  Buyer is advised that the cost incurred to wire funds on behalf of the buyer to the closing
103     agent's escrow account for the closing of this transaction shall become an expense to the buyer and the actual cost
104     incurred shall appear on the closing statement.
105
106 H. POSSESSION:
107     1. The possession of the Property shall be delivered to Buyer ☒ at closing ○ within _____ days beginning
108        the day after closing by ----- ○ a.m. ○ p.m. ○ noon or ○ on or before._____
109        if closed. For each day Seller is entitled to possession after closing, Seller shall pay to Buyer at closing
110        $---------------- per day. If Seller does not deliver possession by the date and time required in the first
111        sentence of this paragraph, Seller shall pay Buyer $--------- per day as liquidated damages
112        until possession is delivered to Buyer, and Buyer shall have all other legal and equitable remedies available
113        against the Seller.
114     2. Maintenance of Property: Seller shall ~~maintain sell~~ the Property in ~~its present condition~~ "as is where is"
115        condition ~~until its possession is delivered~~ to Buyer, ~~subject to repairs in response to any inspection.~~ Buyer
116        may inspect the Property prior to closing to determine whether Seller has complied with this paragraph.
117        ~~Seller shall remove all debris and personal property not included in the sale.~~
118     3. Casualty Loss:Risk of loss by damage or destruction to the Property prior to the closing shall be borne by
119        Seller, including any deductible(s). In the event any damage or destruction is not fully repaired prior to closing,
120        Buyer, at Buyer's option, may either (a) terminate this Agreement with prompt return of earnest money to
121        buyer or (b) elect to close the transaction, in which event Seller's right to all real property insurance
122        proceeds resulting from such damage or destruction shall be assigned in writing by Seller to Buyer.
123     4. Utilities/Municipal Services: Seller shall pay for all municipal services and public utility charges through the
124        day of possession.
125
126 I. SURVEY: Buyer shall receive a (Check one) ○ SURVEYOR LOCATION REPORT, which is a survey where
127     corner markers are not set; ○ BOUNDARY SURVEY, which is a survey where corner markers of the Property are

        _____ 5 Shore Drive, Portage, IN  46368
                 (Property Address)
           Page 2 of 7  (Purchase Agreement)
              Copyright IAR 2015

128 set prior to closing; ☒WAIVED, no survey unless required by lender; at (Check one) O Buyer's expense
129 (included in allowance, if provided) O Seller's expense O Shared equally. The survey shall (1) be received
130 prior to closing and certified as of a current date, (2) be reasonably satisfactory to Buyer, (3) show the location of all
131 improvements and easements, and (4) show the flood zone designation of the Property. If Buyer waives the right to
132 conduct a survey, the Seller, the Listing and Selling Brokers, and all licensees associated with Brokers are released
133 from any and all liability relating to any issues that could have been discovered by a survey. This release shall
134 survive the closing.
135

136 J. FLOOD AREA/OTHER: If the property is located in a flood plain, Buyer may be required to carry flood insurance at
137 Buyer's expense. Revised flood maps and changes to Federal law may substantially increase future flood
138 insurance premiums or require insurance for formerly exempt properties. Buyer should consult with one or more
139 flood insurance agents regarding the need for flood insurance and possible premium increases. Buyer O may
140 ☒may not terminate this Agreement if the Property requires flood insurance. Buyer O may ☒may not terminate
141 this Agreement if the Property is subject to building or use limitations by reason of the location, which materially
142 interfere with Buyer's intended use of the Property.
143

144 K. HOMEOWNER'S INSURANCE: Completion of this transaction shall be contingent upon the Buyer's ability to obtain
145 a favorable written commitment for homeowner's insurance within --- days after acceptance of this Agreement.
146

147 L. ENVIRONMENTAL CONTAMINANTS ADVISORY/RELEASE: Buyer and Seller acknowledge that Listing Broker,
148 Selling Broker and all licensees associated with Brokers are NOT experts and have NO special training,
149 knowledge or experience with regard to the evaluation or existence of possible lead-based paint, radon, mold and
150 other biological contaminants ("Environmental Contaminants") which might exist and affect the Property.
151 Environmental Contaminants at harmful levels may cause property damage and serious illness, including but not
152 limited to, allergic and/or respiratory problems, particularly in persons with immune system problems, young
153 children and/or the elderly.
154

155 Buyer is STRONGLY ADVISED to obtain inspections (see below) to fully determine the condition of the Property
156 and its environmental status. The ONLY way to determine if Environmental Contaminants are present at the
157 Property at harmful levels is through inspections.
158

159 Buyer and Seller agree to consult with appropriate experts and accept all risks for Environmental
160 Contaminants and release and hold harmless all Brokers, their companies and licensees from any
161 and all liability, including attorney's fees and costs, arising out of or related to any inspection, inspection
162 result, repair, disclosed defect or deficiency affecting the Property, including Environmental Contaminants.
163 This release shall survive the closing.
164

165 M. INSPECTIONS: (Check appropriate paragraph number)
166
167 Buyer has been made aware that independent inspections disclosing the condition of the property are available
168 and has been afforded the opportunity to require such inspections as a condition of this Agreement.
169

170 1. ☒ BUYER WAIVES THE RIGHT TO HAVE INDEPENDENT INSPECTIONS
171 Buyer WAIVES inspections and relies upon the condition of the Property based upon Buyer's own
172 examination and releases the Seller, the Listing and Selling Brokers and all licensees associated with
173 Brokers from any and all liability relating to any defect or deficiency affecting the Property, which release
174 shall survive the closing. Required FHA/VA or lender inspections are not included in this waiver.
175
176

177 2. O BUYER RESERVES THE RIGHT TO HAVE INDEPENDENT INSPECTIONS (including Lead-Based Paint)
178 Buyer reserves the right to have independent inspections in addition to any inspection required by FHA, VA,
179 or Buyer's lender(s). All inspections are at Buyer's expense (unless noted otherwise or required by lender) by
180 licensed independent inspectors or qualified independent contractors selected by Buyer within the following
181 time periods. Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's
182 inspections. Seller must make all areas of the Property available and accessible for Buyer's
183 inspection.
184

185 INSPECTION/RESPONSE PERIOD: Buyer shall order all independent inspections after acceptance
186 of the Purchase Agreement. Buyer shall have         days beginning the day following the date of
187 acceptance of the Purchase Agreement to respond to the inspection report(s) in writing to Seller (see
188 "Buyer's Inspection Response").
189

190 Inspections may include but are not limited to the condition of the following systems and components:
191 heating, cooling, electrical, plumbing, roof, walls, ceilings, floors, foundation, basement, crawl space,
192 well/septic, water, wood destroying insects and organisms, lead-based paint (note: intact lead-based paint
193 that is in good condition is not necessarily a hazard), radon, mold and other biological contaminants and/or
194 the following:
195

196      If the initial inspection report reveals the presence of lead-based paint, radon, mold and other biological
197      contaminants, or any other condition that requires further examination or testing, then Buyer shall have
198      ————— additional days to order, receive and respond in writing to any additional reports.
199

200      If the Buyer does not comply with any Inspection/Response Period or make a written objection to any
201      problem revealed in a report within the applicable Inspection/Response Period, the Property shall be
202      deemed to be acceptable. If one party fails to respond or request in writing an extension of time to
203      respond to the other party's Independent Inspection Response, then that inspection response is
204      accepted.  A timely request for extension is not an acceptance of the inspection response, whether or not
205      granted.  A REASONABLE TIME PERIOD TO RESPOND IS REQUIRED TO PREVENT MISUSE OF THIS
206      ACCEPTANCE PROVISION.  Factors considered in determining reasonable time periods include, but are
207      not limited to, availability of responding party to respond, type and expense of repairs requested and need of
208      responding party to obtain additional opinions to formulate a response.
209

210      If Buyer reasonably believes that the Inspection Report reveals a DEFECT with the Property (under Indiana
211      law, "Defect" means a condition that would have a significant adverse effect on the value of the
212      Property, that would significantly impair the health or safety of future occupants of the Property, or
213      that if not repaired, removed, or replaced would significantly shorten or adversely affect the expected
214      normal life of the premises), and Seller is unable or unwilling to remedy the defect to Buyer's reasonable
215      satisfaction before closing (or at a time otherwise agreed to by the parties), then Buyer may terminate this
216      Agreement or waive such defect and the transaction shall proceed toward closing. BUYER AGREES THAT
217      ANY PROPERTY DEFECT PREVIOUSLY DISCLOSED BY SELLER, OR ROUTINE MAINTENANCE AND
218      MINOR REPAIR ITEMS MENTIONED IN ANY REPORT, SHALL NOT BE A BASIS FOR TERMINATION OF
219      THIS AGREEMENT.
220

221  N.  LIMITED HOME WARRANTY PROGRAM:
222      Buyer acknowledges the availability of a LIMITED HOME WARRANTY PROGRAM with a deductible paid by Buyer
223      which O will IXI will  not be provided at a cost not to exceed$ N/A                  charged to O Buyer   O Seller
224      and ordered by O Buyer  O Seller. Buyer and Seller acknowledge this LIMITED HOME WARRANTY PROGRAM
225      may not cover any pre-existing defects in the Property nor replace the need for an independent home inspection.
226      Broker may receive a fee from the home warranty provider and/or a member benefit. The Limited Home Warranty
227      Program is a contract between Buyer/Seller and the Home Warranty Provider. The Parties agree that Brokers and
228      their companies shall be released and held harmless in the event of claims disputes with the Home Warranty
229      Provider.
230

231  O.  DISCLOSURES:(Check one)
232      1.    Buyer IXI has O has not O not applicable received and executed SELLER'S RESIDENTIAL REAL
233      ESTATE
234      SALES DISCLOSURE.
235      2.    Buyer IXI has O has not O not applicable received and executed a LEAD-BASED PAINT
236      CERTIFICATION AND ACKNOWLEDGMENT.
237  P.

238      TITLE APPROVAL: Prior to closing, Buyer shall be furnished with IXI a title insurance commitment for the most
239      current and comprehensive ALTA Owner's Title Insurance Policy available in the amount of the purchase
240      price or O an abstract of title continued to date, showing marketable title to Property in Seller's name. Seller
241      must convey title free and clear of any encumbrances and title defects pursuant to applicable provisions of the
242      Bankruptcy Code, with the exception of any mortgage assumed by Buyer and any restrictions or easements of
243      record not materially interfering with Buyer's intended use of the Property. A title company, at Buyer's request, can
244      provide information about availability of various additional title insurance coverages and endorsements and the
245      associated costs.
246

247      Owner's Title Insurance Premium and that portion of Title Service Fees incurred to prepare the Owner's Policy
248      (including title search and examination and commitment preparation), to be paid by O Buyer (included in
249      allowance, if provided) IXI Seller  O Shared equally.
250

251      Lender's Title Insurance Premium and that portion of Title Service Fees incurred to prepare the Lender's Policy
         (including title search and examination and commitment preparation), if applicable, to be paid by IXI Buyer (included
         in allowance, if provided) O Seller  O Shared equally  O Other _____
252
253      The parties agree that IXI Seller II Buyer  will select a title insurance company to issue a title insurance policy
254      and will order the commitment III immediately or  O other:  Title insurance will be through title company to be
255      selected by Seller. _____
256
257      Pursuant to Federal and State law, Seller cannot make Seller's selection of a title insurance provider a condition of
258      this Agreement.
259
260      Seller agrees to pay the cost of obtaining all other documents necessary to perfect title (including the cost of the
261      deed and vendor's affidavit), so that marketable title can be conveyed.
262
263  Q  TAXES:(Check appropriate paragraph number)
         O 1. Buyer will assume and pay all taxes on the Property beginning with the taxes due and payable on

264     _____ , and all taxes due thereafter. At or before closing, Seller shall pay all
265      taxes for the Property payable before that date.

266 IXI2. All taxes that have accrued for any prior calendar year that remain unpaid shall be paid by Seller either to
267      the County Treasurer and/or the Buyer in the form of a credit at closing. All taxes that have accrued for the
268      current calendar year shall be prorated on a calendar-year basis as of the day immediately prior to the
269      Closing Date.
270

271 For purposes of paragraph 1 and 2: For the purpose of determining the credit amount for accrued but unpaid
272 taxes, taxes shall be assumed to be the same as the most recent year when taxes were billed based upon *certified*
273 tax rates. This shall be a final settlement.
274

275 O 3. FOR RECENT CONSTRUCTION OR OTHER TAX SITUATIONS. Seller will give a tax credit of
276 $_____ to Buyer at closing. This shall be a final settlement.
277

278 WARNING: THE SUCCEEDING YEAR TAX BILL FOR RECENTLY CONSTRUCTED HOMES OR FOLLOWING
279 REASSESSMENT PERIODS MAY GREATLY EXCEED THE LAST TAX BILL AVAILABLE TO THE CLOSING AGENT.
280

281 Buyer acknowledges Seller's tax exemptions and/or credits may not be reflected on future tax bills.
282

283 Buyer may apply for current-year exemptions/credits at or after closing.
284

285 R. PRORATIONS AND SPECIAL ASSESSMENTS: Insurance, if assigned to Buyer, interest on any debt assumed or
286      taken subject to, any rents, all other income and ordinary operating expenses of the Property, including but not
287      limited to, public utility charges, shall be prorated as of the day immediately prior to the Closing Date. Seller shall
288      pay any special assessments applicable to the Property for municipal improvements previously made to benefit the
289      Property. ~~Seller warrants that Seller has no knowledge of any planned improvements which may result in~~
290      ~~assessments and that no governmental or private agency has served notice requiring repairs, alterations or~~
291      ~~corrections of any existing conditions.~~ Public or municipal improvements which are not completed as of the date
292      above but which will result in a lien or charge shall be paid by Buyer. Buyer will assume and pay all special
293      assessments for municipal improvements completed after the date of this Agreement.
294

295 S. TIME: Time is of the essence. Time periods specified in this Agreement and any subsequent Addenda to the
296      Purchase Agreement are calendar days and shall expire at 11:59 PM of the date stated unless the parties agree in
297      writing to a different date and/or time.
298

299 Note: Seller and Buyer have the right to withdraw any offer/counter offer prior to written acceptance and
300 delivery of such offer/counter offer.
301

302 T. HOMEOWNERS ASSOCIATION/CONDOMINIUM ASSOCIATION ("Association"): Documents for a mandatory
303      membership association shall be delivered by the Seller to Buyer within   —————   days after acceptance of this
304      Agreement. Broker is not responsible for obtaining or verifying this information. If the Buyer does not make a written
305      response to the documents within   ————   days after receipt, the documents shall be deemed acceptable. In the
306      event the Buyer does not accept the provisions in the documents and such provisions cannot be waived, this
307      Agreement may be terminated by the Buyer and the earnest money deposit shall be refunded to Buyer promptly.
308      Any approval of sale required by the Association shall be obtained by the Seller, in writing, within   —————   days
309      after Buyer's approval of the documents. Fees charged by the "Association", or its management company, for
310      purposes of verification of good standing and/or transfer of ownership shall be shared equally by Buyer and Seller.
311      Start-up or one time reserve fees, if any, shall be paid by Buyer.
312

313 Buyer acknowledges that in every neighborhood there are conditions which others may find objectionable.
314 Buyer shall therefore be responsible to become fully acquainted with neighborhood and other off-site
315 conditions that could affect the Property.
316

317 U. ATTORNEY'S FEES: Any party to this Agreement who is the prevailing party in any legal or equitable proceeding
318      against any other party brought under or with relation to the Agreement or transaction shall be additionally entitled
319      to recover court costs and reasonable attorney's fees from the non-prevailing party.
320

321 V. ADDITIONAL PROVISIONS:
322

323      1. Unless otherwise provided, any prorations for rent, taxes, insurance, damaQe deposits, association dues/
324         assessments, or any other items shall be computed as of the day immediately pnor to the Closing Date.
325

326      2. Underground mining has occurred in Indiana, and Buyers are advised of the availability of subsidence
327         insurance.
328

329      3. The Indiana State Police has created a registry of known meth contaminated properties which can be found at
330         www.in.gov/meth. Click on "Clan Lab Addresses." Broker is not responsible for providing or verifying this
331         information.

Copyright IAR 2015
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com        James Blatsioris

4. The Indiana Sheriff's Sex Offender Registry (www.indianasheriffs.org) exists to inform the public about the identity, location and appearance of sex offenders residing within Indiana. Broker is not responsible for providing or verifying this information.

5. Conveyance of this Property shall be by ~~general Warranty Deed, or by~~ *SB* Trustees Quit Claim subject to taxes, easements, restrictive covenants and encumbrances of record, unless otherwise agreed.

6. If it is determined Seller is a "foreign person" subject to the Foreign Investment in Real Property Tax Act, Seller will pay applicable tax obligation.

7. Any notice required or permitted to be delivered shall be deemed received when personally delivered, transmitted electronically or digitally or sent by express courier or United States mail, postage prepaid, certified and return receipt requested, addressed to Seller or Buyer or the designated agent of either party.

8. This Agreement shall be construed under and in accordance with the laws of the State of Indiana and is binding upon the parties' respective heirs, executors, administrators, legal representatives, successors, and assigns.

9. In case any provision contained in this Agreement is held invalid, illegal, or unenforceable in any respect, the invalidity, illegality, or unenforceability shall not affect any other provision of this Agreement.

10. This Agreement constitutes the sole and only agreement of the parties and supersedes any prior understandings or written or oral agreements between the parties' respecting the transaction and cannot be changed except by their written consent.

11. All rights, duties and obligations of the parties shall survive the passing of title to, or an interest in, the Property.

12. Broker(s) may refer Buyer or Seller to other professionals, service providers or product vendors, including lenders, loan brokers, title insurers, escrow companies, inspectors, pest control companies, contractors and home warranty companies. Broker(s) does not guarantee the performance of any service provider. Buyer and Seller are free to select providers other than those referred or recommended to them by Broker(s). The Parties agree that Brokers and their companies shall be released and held harmless in the event of claims disputes with any service provider.

13. By signing below, the parties to this transaction acknowledge: 1) receipt of a copy of this Agreement; and 2) information regarding this transaction may be published in a multiple listing service, Internet or other advertising media.

14. Any amounts payable by one party to the other, or by one party on behalf of the other party, shall not be owed until this transaction is closed.

15. Buyer and Seller consent to receive communications from Broker(s) via telephone, U.S. mail, email and facsimile at the numbers/addresses provided to Broker(s) unless Buyer and Seller notify Broker(s) in writing to the contrary.

16. Buyer discloses to Seller that Buyer holds Indiana Real Estate License# N/A._____

17. Where the word "Broker" appears, it shall mean "Licensee" as provided in I.C.25-34.1-10-6.8.

W. FURTHER CONDITIONS (List and attach any addenda): _-:---:--:----:----:----==-:----:-:--- ___
   1. All parties acknowledge that the property is being purchased in its "as is/where is" condition. Buyer assumes all risks.
   2. Seller/Trustee will ~~have~~ permit Dr. Wright to remove any personal property located on the premises ~~belonging to the former owner, Dr. Wright removed~~ prior to closing. Any Personal property remaining on the Property at closing shall be removed by Buyer at Buyer's sole cost and expense.
   3. This Purchase Agreement is subject to court approval within 60 days after acceptance by Trustee.
   4. Earnest money will be given to listing agent/company upon acceptance by Trustee, subject to Court Approval.
   5. This transaction includes the following 2 Parcel #'s:
      64-02-26-428-007.000-017 and 64-02-26-428-008.000-017

   6. This Agreement is subject to the terms and conditions of the attached Bankruptcy Rider.

X. CONSULT YOUR ADVISORS: Buyer and Seller acknowledge they have been advised that, prior to signing this document, they may seek the advice of an attorney for the legal or tax consequences of this document and the transaction to which it relates. In any real estate transaction, it is recommended that you consult with a

5 Shore Drive, Portage, IN  46368
(Property Address)
Page 6 of 7  (Purchase Agreement)
Copyright IAR 2015

400   professional, such as a civil engineer, environmental engineer, or other person, with experience in evaluating the
401   condition of the Property.
402
403   Y.  **ACKNOWLEDGEMENTS:** This ☒ is ☐ is not a limited agency transaction.  Buyer and Seller acknowledge that each
404   has received agency office policy disclosures, has had agency explained, and now confirms all agency
405   relationships. Buyer and Seller further acknowledge that they understand and accept agency relationships involved
406   in this transaction. By signature below, the parties verify that they understand and approve this Purchase Agreement
407   and acknowledge receipt of a signed copy.
408
409   Z.  **EXPIRATION OF OFFER:** Unless accepted by Seller and delivered to Buyer by _____ **5:00** _____ ☐ A.M. ☒ P.M.
410   ☐ Noon, the __18th__ day of __February, 2015__ , this Purchase Agreement shall be null and void and all
411   parties shall be relieved of any and all liability or obligations.
412
413        This Agreement may be executed simultaneously or in two or more counterparts, each of which shall be deemed
414        an original but all of which together shall constitute one and the same instrument. The parties agree that this
415        Agreement may be transmitted between them electronically or digitally. The parties intend that electronically or
416        digitally transmitted signatures constitute original signatures and are binding on the parties. The original document
417        shall be promptly delivered, if requested.
418
419
420
421
422   BUYER'S SIGNATURE            02/11/2015      BUYER'S SIGNATURE            02/11/2015
               DATE                                   DATE
423
424   James Blatsioris                              Shehong Z. Blatsioris
425   PRINTED                                       PRINTED
426
427   AA. **SELLER'S RESPONSE: (Check appropriate paragraph number):**
428
429   This _____ day of _____, at _____ ☐ A.M. ☐ P.M. ☐ Noon
430
431   ☐ 1.  The above offer is Accepted.
432
433   ☐ 2.  The above offer is Rejected.
434
435   ☒ 3.  The above offer is Countered. See Counter Offer. Seller should sign both the Purchase Agreement and
436        the Counter Offer.
437
438
439                         Bankruptcy
440                          as Trustee    2/18/15
441   SELLER'S SIGNATURE           DATE      SELLER'S SIGNATURE            DATE
442
443   Elizabeth Berg As Trustee for                 Bankruptcy Estate of Theodore
444   PRINTED  the Estate of Theodore S. Wright, Jr.  PRINTED
              Debtor



Prepared and provided as a member service by the Indiana Association of REALTORS®, Inc. (IAR).  This form is
restricted to use by members of IAR.  This is a legally binding contract, if not understood seek legal advice.
Form #02.  Copyright IAR 2015



**Bankruptcy Rider
to Real Estate Sales Contract
Dated February 18, 2015**

R-1.    This Rider is attached to and made a part of the printed Sales Contract to which it is attached for the sale of the property located at **5 Shore Drive, Portage IN 46368**("Property"). In the event of a conflict or inconsistency between the terms of this Rider and the printed form contract, the terms of this Rider shall control.

R-2.    This contract and the obligations contemplated hereby are and at all times shall be subject to and conditioned upon the prior approval of the United States Bankruptcy Court for the Northern District of Illinois in the case captioned "Theodore S. Wright, Jr., debtor" as case number 10-36548. Seller shall promptly file a motion for approval of this contract ("Motion") with the United States Bankruptcy Court and use Seller's best efforts to schedule the court hearing upon the motion as soon as possible thereafter.   In the event Seller is unable to obtain an order approving the Sales Contract within 60 days of acceptance of the Sale Contract, this Sale Contract shall be deemed null and void and the earnest money deposit shall be returned to Buyer.

R-3.    Buyer acknowledges that Seller is required by applicable bankruptcy law to provide notice of the court hearing on the Motion to third parties who will be eligible to submit competitive bids for the Property at the time of the hearing, provided, however that any such competitive bids considered by Trustee must be at least $5,000.00 higher than Buyer's bid, must be accompanied by a $5,000.00 earnest money deposit and must be on the same terms of the Sale Contract.

R-4.    Following entry of the Bankruptcy Court's order approving the Sales Contract and the proposed sale, Seller shall sell the Property to Buyer pursuant to sections 363 (b) and (f) of the Bankruptcy Code, free and clear of all liens, claims or interests (except for those permitted exceptions set forth in the Contract), with any liens, claims or interests to attach to the proceeds of sale after payment of all closing costs.   Trustee shall convey the Property to Buyer by a recordable Trustee's quit claim deed.

R-5.    Buyer has conducted such prior investigations and made such prior examinations of the Property and any records or other documents so as to be sufficiently informed of the nature and condition of the Property. The Property is being sold in an "as is, where is" condition. Seller has not made and expressly states that she is not hereby making any representation or warranty of any kind or nature with respect to the Property or any personal property located thereon on the date of Closing, all of which is being sold hereunder in an "as is, where is" condition.

R-7.    This Contract is executed by Elizabeth C. Berg, not personally, but solely as bankruptcy trustee of the Estate of Theodore S. Wright, Jr., debtor(s) in the chapter 7

case pending in the Northern District of Illinois under case number 10-36548, in the exercise of the power and authority conferred upon and vested in her pursuant to the United States Bankruptcy Code, 11 U.S.C. section 101, *et seq.*   No personal liability shall be asserted or be enforceable against the Trustee individually because or in respect of the execution of this Contract, the performance of the obligations hereunder, or the transaction contemplated hereby, all such liability, if any, being expressly waived by Buyer.

Dated:  February 18, 2015

Buyer:                                                Seller:

_____                _____
 James Blatsioris                                    Elizabeth C. Berg, Trustee of the Estate of
**(Print Name)**                                      Theodore S. Wright, Jr., debtor(s)

Buyer:

_____
 Shehong Z Blatsioris
**(Print Name)**

**INDIANA ASSOCIATION OF REALTORS, INC.**

# LIMITED AGENCY AGREEMENT

**(Licensee represents both Seller and Buyer or both Landlord and Tenant)**
**(Managing Broker personally represents a client and affiliated Licensee represents other client)**

This Limited Agency Agreement ("Agreement") is dated ____February 11____, __2015__ .

**A. BUYER/TENANT ("Buyer"):** James Blatsioris, Shehong Z. Blatsioris

**B. SELLER/LANDLORD ("Seller"):** Elizabeth Berg As Trustee for , Bankruptcy Estate of Theodore Wright Jr. Case #10-B36548

**C. SUBJECT PROPERTY ("Property"):** 5 Shore Drive

Portage                                          IN                    46368

**D. NAME OF LIMITED AGENTS(S) ("Licensee"):** David W. Barrick

("Purchase price/listed price" shall also mean "lease rate," if applicable. "Licensee" shall refer to any broker acting as agent for a party. "Limited agent" means a licensee who, with the written and informed consent of all parties to a real estate transaction, represents both the Seller and Buyer.)

**E. LIMITED AGENCY AUTHORIZATION:** The Licensee is authorized by Seller and Buyer to represent both of them in this transaction. Seller and Buyer understand that this limited agency relationship may create certain conflicts of interest, and that Licensee is representing two parties whose interests are different or even adverse.

**F. ADDITIONAL DISCLOSURES:** Seller and Buyer acknowledge that Licensee shall not disclose the following without the informed consent, in writing, of both Seller and Buyer:

(1) Any material or confidential information, except adverse material facts or risks actually known by the Licensee concerning the physical condition of the Property and facts required by statute, rule, or regulation to be disclosed and that could not be discovered by a reasonable and timely inspection of the Property by the parties.

(2) That a buyer will pay more than the offered purchase price for the Property.

(3) That a Seller will accept less than the listed price for the Property.

(4) What motivates a party to buy, sell or lease the Property.

(5) Other terms that would create a contractual advantage for one (1) party over another party.

Seller and Buyer acknowledge that there will be no imputation of knowledge or information between any party and the limited agent or among Licensees.

Seller and Buyer acknowledge that they do not have to consent to the limited agency in this transaction.

Seller and Buyer consent voluntarily to Licensee's limited agency capacity and waive any claims, damages, losses, expenses, including attorneys' fees and costs, against Licensee arising from Licensee's role of limited agent.

**G. PRIOR AGREEMENTS:** Seller and Buyer understand this Agreement does not replace prior agreements with Licensee to represent Seller or Buyer. However, where this Limited Agency Agreement contradicts or conflicts with prior agreements, this Limited Agency Agreement shall supersede.

5 Shore Drive, Portage, IN 46368
(Property Address)
**Page 1 of 2   (Limited Agency Agreement)**
Copyright IAR 2015

Coldwell Banker Res. Brokerage, 20 E. Highway US 30 Schererville, IN 46375
Phone: 219.865.9911        Fax: 219.227.0279        David Barrick

James Blatsioris

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   3

57      **H. CANCELLATION:** If the Seller and Buyer do not enter into an agreement relating to the Property or if the
58      transaction fails to close, Seller and Buyer agree that this Agreement is automatically cancelled and the
59      Licensee's role of limited agent is terminated.
60
61      **By signature below, the parties verify that they understand and approve this Limited Agency**
62      **Agreement and acknowledge receipt of a signed copy. This Agreement may be executed**
63      **simultaneously or in two or more counterparts, each of which shall be deemed an original, but all of**
64      **which together shall constitute one and the same instrument. The parties agree that this Agreement**
65      **may be transmitted between them electronically or digitally. The parties intend that electronically or digitally**
66      **transmitted signatures constitute original signatures and are binding on the parties. The original document**
67      **shall be promptly delivered, if requested.**

| | |
|---|---|
| _____ 02/11/2015 | _____ 02/11/2015 |
| BUYER'S SIGNATURE            DATE | BUYER'S SIGNATURE            DATE |
| **James Blatsioris** | **Shehong Z. Blatsioris** |
| PRINTED | PRINTED |
| _____ 3/18/15 | _____ |
| SELLER'S SIGNATURE            DATE | SELLER'S SIGNATURE            DATE |
| **Elizabeth Berg As Trustee for** | **Bankruptcy Estate of Theodore Wright,** |
| PRINTED | PRINTED   Debtor |
| | Case No. 10- 36548 |





Prepared and provided as a member service by the Indiana Association of REALTORS®, Inc. (IAR). This form
is restricted to use by members of IAR. This is a legally binding contract, if not understood seek legal advice.
Form #40. Copyright IAR 2015

_____
**5 Shore Drive, Portage, IN   46368**
(Property Address)
**Page 2 of 2   (Limited Agency Agreement)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                    James Blatsioris



**SELLER'S RESIDENTIAL REAL ESTATE SALES DISCLOSURE**
State Form 46234 (R8/ 6-14)

Date *(month, day, year)*
**January  2015**

NOTE: This form has been modified from the version currently found at 876 IAC 9-1-2 to include questions regarding disclosure of contamination related to controlled substances or methamphetamine as required by P.L. 155-2014. Rule revisions will be made to 876 IAC 9-1-2 to include these changes in the near future, however the Commission has made that information available upon through this certification.

Property address *(number and street, city, state, and ZIP code)*

5 Shore Drive (Ogden Dunes) Portage, Indiana 46368

1. The following are in the conditions indicated:

| A. APPLIANCES | None/Not Included/Rented | Defective | Not Defective | Do Not Know |
|---|---|---|---|---|
| Built-in Vacuum System | | | | |
| Clothes Dryer | | | | |
| Clothes Washer | | | | |
| Dishwasher | | | | |
| Disposal | | | | |
| Freezer | | | | |
| Gas Grill | | | | |
| Hood | | | | |
| Microwave Oven | | | | |
| Oven | | | | |
| Range | | | | |
| Refrigerator | | | | |
| Room Air Conditioner(s) | | | | |
| Trash Compactor | | | | |
| TV Antenna/Dish | | | | |
| Other: | | | | |

| B. ELECTRICAL SYSTEM | None/Not Included/Rented | Defective | Not Defective | Do Not Know |
|---|---|---|---|---|
| Air Purifier | | | | |
| Burglar Alarm | | | | |
| Ceiling Fan(s) | | | | |
| Garage Door Opener / Controls | | | | |
| Inside Telephone Wiring and Blocks/Jacks | | | | |
| Intercom | | | | |
| Light Fixtures | | | | |
| Sauna | | | | |
| Smoke/Fire Alarm(s) | | | | |
| Switches and Outlets | | | | |
| Vent Fan(s) | | | | |
| 60/100/200 Amp Service (Circle one) | | | | |
| Generator | | | | |

NOTE: "Defect" means a condition that would have a significant adverse effect on the value of the property, that would significantly impair the health or safety of future occupants of the property, or that if not repaired, removed or replaced would significantly shorten or adversely affect the expected normal life of the premises.

| C. WATER & SEWER SYSTEM | None/Not Included/Rented | Defective | Not Defective | Do Not Know |
|---|---|---|---|---|
| Cistern | | | | |
| Hot Tub | | | | |
| Hot Tub | | | | |
| Plumbing | | | | |
| Aerator System | | | | |
| Sump Pump | | | | |
| Irrigation Systems | | | | |
| Water Heater/Electric | | | | |
| Water Heater/Gas | | | | |
| Water Heater/Solar | | | | |
| Water Purifier | | | | |
| Water Softener | | | | |
| Well | | | | |
| Septic and Holding Tank/Septic Mound | | | | |
| Geothermal and Heat Pump | | | | |
| Other Sewer System (Explain) | | | | |
| Swimming Pool & Pool Equipment | | | | |

| | Yes | No | Do Not Know |
|---|---|---|---|
| Are the structures connected to a public water system? | | | |
| Are the structures connected to a public sewer system? | | | |
| Are there any additions that may require improvements to the sewage disposal system? | | | |
| If yes, have the improvements been completed on the sewage disposal system? | | | |
| Are the improvements connected to a private/community water system? | | | |
| Are the improvements connected to a private/community sewer system? | | | |

| D. HEATING & COOLING SYSTEM | None/Not Included/Rented | Defective | Not Defective | Do Not Know |
|---|---|---|---|---|
| Attic Fan | | | | |
| Central Air Conditioning | | | | |
| Hot Water Heat | | | | |
| Furnace Heat/Gas | | | | |
| Furnace Heat/Electric | | | | |
| Solar House-Heating | | | | |
| Woodburning Stove | | | | |
| Fireplace | | | | |
| Fireplace Insert | | | | |
| Air Cleaner | | | | |
| Humidifier | | | | |
| Propane Tank | | | | |
| Other Heating Source | | | | |

The information contained in this Disclosure has been furnished by the Seller, who certifies to the truth thereof, based on the Seller's CURRENT ACTUAL KNOWLEDGE. A disclosure form is not a warranty by the owner or the owner's agent, if any, and the disclosure form may not be used as a substitute for any inspections or warranties that the prospective buyer or owner may later obtain. At or before closing, the owner is required to disclose any material change in the physical condition of the property or certify to the prospective buyer or owner at settlement that the condition of the property is substantially the same as it was when the disclosure form was provided. Seller and Purchaser hereby acknowledge receipt of this Disclosure by signing below.

| Signature of Seller | Date *(mm/dd/yy)* | Signature of Buyer | Date *(mm/dd/yy)* |
|---|---|---|---|
| *Elizabeth Berg, as Trustee* | 1/27/15 | | 2/11/2015 |
| Signature of Seller | Date *(mm/dd/yy)* | Signature of Buyer | Date *(mm/dd/yy)* |
| | | | 2/11/2015 |

The Seller hereby certifies that the condition of the property is substantially the same as the Seller's Disclosure form was originally provided to the Buyer.

| Signature of Seller | Date *(mm/dd/yy)* | Signature of Seller *(at closing)* | Date *(mm/dd/yy)* |
|---|---|---|---|
| *Elizabeth Berg, as Trustee* | 1/27/15 | | |

Page 1 of 2

Elizabeth Bergles Trustee for Bankruptcy Estate of Theodore Wright Jr.   Case 10-B36548
Coldwell Banker Res. Brokerage, 30 E. Highway US 20 Schererville, IN 46375
David Barnett

Phone: 219.865.9931   Fax: 219.227.0179   5 Shore Drive, Ogden

Produced with zipForm® by zipLogix  18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

Property address *(number and street, city, state, and ZIP code)*
**5 Shore Drive (Ogden Dunes) Portage, Indiana 46368**

| 2. ROOF | YES | NO | DO NOT KNOW |
|---|---|---|---|
| App. if known: _____ Years. | | | |
| Does the roof leak? | | | |
| Is there present damage to the roof? | | | |
| Is there more than one layer of shingles on the house? | | | |
| If yes, how many layers? _____ | | | |

| 3. HAZARDOUS CONDITIONS | YES | NO | DO NOT KNOW |
|---|---|---|---|
| Have there been or are there any hazardous conditions on the property, such as methane gas, lead paint, radon gas in house or well, radioactive material, landfill, mineshaft, expansive soil, toxic materials, mold, other biological contaminants, asbestos insulation, or PCBs? | | | |
| Is there contamination caused by the manufacture of a controlled substance on the property that has not been certified as decontaminated by an inspector approved under IC 13-14-1-157 | | | |
| Has there been manufacture of methamphetamine or dumping of waste from the manufacture of methamphetamine in a residential structure on the property? | | | |
| Explain: | | | |

**E. ADDITIONAL COMMENTS AND/OR EXPLANATIONS:**
*(Use additional pages, if necessary)*

This is a Bankruptcy Sale. Trustee has no practical knowledge of the actual condition of the property or its mechanicals. Property to be sold in its "as is/where is" condition. Buyer assumes all risks.

| 4. OTHER DISCLOSURES | YES | NO | DO NOT KNOW |
|---|---|---|---|
| Do structures have aluminum wiring? | | | |
| Are there any foundation problems with the structures? | | | |
| Are there any encroachments? | | | |
| Are there any violations of zoning, building codes, or restrictive covenants? | | | |
| Is the present use a non-conforming use? Explain: | | | |
| Is the access to your property via a private road? | | | |
| Is the access to your property via a public road? | | | |
| Is the access to your property via an easement? | | | |
| Have you received any notices by any governmental or quasi-governmental agencies affecting this property? | | | |
| Are there any structural problems with the building? | | | |
| Have any substantial additions or alterations been made without a required building permit? | | | |
| Are there moisture or water problems in the basement, crawl space area, or any other area? | | | |
| Is there any damage due to wind, flood, termites, or rodents? | | | |
| Have any structures been treated for wood destroying insects? | | | |
| Are the furnace/woodstove/chimney/flue all in working order? | | | |
| Is the property in a flood plain? | | | |
| Do you currently pay flood insurance? | | | |
| Does the property contain underground storage tank(s)? | | | |
| Is the homeowner a licensed real estate salesperson or broker? | | | |
| Is there any threatened or existing litigation regarding the property? | | | |
| Is the property subject to covenants, conditions and/or restrictions of a homeowner's association? | | | |
| Is the property located within one (1) mile of an airport? | | | |

The information contained in this Disclosure has been furnished by the Seller, who certifies to the truth thereof, based on the Seller's CURRENT ACTUAL KNOWLEDGE. A disclosure form is not a warranty by the owner or the owner's agent, if any, and the disclosure form may not be used as a substitute for any inspections or warranties that the prospective buyer or owner may later obtain. At or before settlement, the owner is required to disclose any material change in the physical condition of the property or certify to the purchaser at settlement that the condition of the property is substantially the same as it was when the disclosure form was provided. Seller and Purchaser hereby acknowledge receipt of this Disclosure by signing below.

| Signature of Seller | Date (mm/dd/yy) | Signature of Buyer | Date (mm/dd/yy) |
|---|---|---|---|
| *Elizabeth Berg as Trustee* | | | 2/11/2015 |
| | | | 2/11/2015 |

The Seller hereby certifies that the condition of the property is substantially the same as it was when the Seller's disclosure form was originally provided to the Buyer.

| Signature of Seller *(at closing)* | Date (mm/dd/yy) | Signature of Seller *(at closing)* | Date (mm/dd/yy) |
|---|---|---|---|



Form #03. IAR July 2014.

Page 2 of 2

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

**Elizabeth Berg as Trustee for Bankruptcy Estate of Theodore Wright Jr.   Case 10-B36548**



## LEAD-BASED PAINT CERTIFICATION AND ACKNOWLEDGMENT
### Disclosure of Information on Lead-Based Paint and/or Lead-Based Paint Hazards
### (SALES)

**PROPERTY ADDRESS:** 5 Shore Drive, Portage,    46368

**LEAD WARNING STATEMENT**

*Every buyer of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.*

**SELLER'S DISCLOSURE**

(a.) Presence of lead-based paint and/or lead-based paint hazards: *(check (i) or (ii) below)*

(i) _____ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain):_____

_____

(ii) __X__ Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.

(b.) Records and reports available to the seller: *(check (i) or (ii) below)*

(i) _____ Seller has provided the buyer with all available records and reports including *Seller's Residential Real Estate Sales Disclosure* form, if applicable, pertaining to lead-based paint and/or lead-based paint hazards in the housing (list and attach documents below):_____

_____

(ii) __X__ Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

**BUYER'S ACKNOWLEDGMENT** *(initial)*

(c.) _____ Buyer has received copies of all information listed above.

(d.) _____ Buyer has received the pamphlet *Protect Your Family From Lead In Your Home.*

(e.) _____ Buyer has (check (i) or (ii) below):

(i) _____ received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards;

OR

(ii) _____ waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

**BROKER'S ACKNOWLEDGMENT** *(initial)*

(f.) _____ Broker has informed the seller of seller's obligations under the *Residential Lead-Based Paint Hazard Reduction Act of 1992 (42 U.S.C. 4852d)* and is aware of Broker's responsibility to ensure compliance. (NOTE: where the word "Broker" appears, it shall mean "Licensee" as provided in I.C.25-34.1-10-6.8.)

5 Shore Drive, Portage,    46368
*(Property Address)*

**Page 1 of 2    (Lead-Based Paint - Sales)**

Coldwell Banker Res. Brokerage, 20 E. Highway US 30 Schererville, IN 46375
Phone: 219.865.9911    Fax: 219.227.0279
David Banick
Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com    5 Shore Drive,

**45** **CERTIFICATION OF ACCURACY**

**46** The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they
**47** have provided is true and accurate.
**48**
**49** This *Certification* and *Acknowledgment* may be executed simultaneously or in two or more counterparts, each of which shall be
**50** deemed an original, but all of which together shall constitute one and the same instrument. The parties agree that this
**51** *Certification* and *Acknowledgment* may be transmitted between them electronically or digitally. The parties intend that
**52** electronically or digitally transmitted signatures constitute original signatures and are binding on the parties. The original
**53** document shall be promptly delivered, if requested.
**54**
**55**
**56** SELLER'S SIGNATURE                            DATE          BUYER'S SIGNATURE                  2/11/2015
                                                                                                      DATE
**57** Elizabeth Berg as Trustee for Bankruptcy
**58** Estate of Theodore Wright Jr.  Case 10-B36548   James Blatsioris
**59** PRINTED                                                   PRINTED
**60**
**61**
**62** SELLER'S SIGNATURE                            DATE          Shehong Z. Blatsioris    2/11/2015
                                                              BUYER'S SIGNATURE                DATE
**63**
**64**
**65** PRINTED                                                   PRINTED
**66**
**67** LISTING BROKER                                 DATE          SELLING BROKER              2-11-15
                                                                                                      DATE
**68** David W. Barrick                                          David W. Barrick



Prepared and provided as a member service by the Indiana Association of REALTORS®, Inc. (IAR). This form is
restricted to use by members of IAR. This is a legally binding contract, if not understood seek legal advice.
Form #37. Copyright IAR 2014



5 Shore Drive, Portage,      46368
(Property Address)

**Page 2 of 2  (Lead-Based Paint - Sales)**

Produced with ZipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com          5 Shore Drive,